FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 14, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TRINIDAD R.,[1]

                Plaintiff,

    v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                Defendant.

No.    4:21-cv-5007-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, REVERSING THE ALJ, AND REMANDING FOR PAYMENT OF BENEFITS**

Plaintiff Trinidad R. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because the ALJ consequentially erred when evaluating Plaintiff's symptom testimony and the medical opinions, Plaintiff's Motion for Summary Judgment, ECF No. 17, is granted, the Commissioner's Motion for Summary Judgment, ECF No. 20, is denied, the ALJ's decision is reversed, and this matter is remanded for payment of benefits.

---

[1] To protect the privacy of the each social-security plaintiff, the Court refers to them by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

# I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[2] Step one assesses whether the claimant is engaged in substantial gainful activity.[3] If the claimant is engaged in substantial gainful activity, benefits are denied.[4] If not, the disability evaluation proceeds to step two.[5]

Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[6] If the claimant does not, benefits are denied.[7] If the claimant does, the disability evaluation proceeds to step three.[8]

Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner as so severe as to preclude substantial gainful activity.[9] If an impairment or combination of impairments

---

[2] 20 C.F.R. § 416.920(a).

[3] *Id.* § 416.920(a)(4)(i).

[4] *Id.* § 416.920(b).

[5] *Id.*

[6] *Id.* § 416.920(a)(4)(ii).

[7] *Id.* § 416.920(c).

[8] *Id.*

[9] *Id.* § 416.920(a)(4)(iii).

meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[10] If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[11] If the claimant can perform past work, benefits are denied.[12] If not, the disability evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[13] If so, benefits are denied. If not, benefits are granted.[14]

The claimant has the initial burden of establishing he is entitled to disability benefits under steps one through four.[15] At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[16]

---

[10] 20 C.F.R. § 416.920(d).

[11] *Id.* § 416.920(a)(4)(iv).

[12] *Id.*

[13] *Id.* § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[14] 20 C.F.R. § 416.920(g).

[15] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[16] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

## II.    Factual and Procedural Summary

On December 15, 2015, Plaintiff filed a Title 16 application alleging disability beginning in 2000.[17] His claim was denied initially and on reconsideration.[18] An administrative hearing was held by telephone in 2018 before ALJ Jesse Shumway, who subsequently issued an unfavorable decision denying Plaintiff's application.[19] Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[20] He then sought review by this Court.[21] In that lawsuit, the parties agreed that the matter should be remanded back to the ALJ for further proceedings to reevaluate step three, reconsider the medical evidence, reevaluate Plaintiff's symptom reports, and reassess Plaintiff's RFC.[22]

ALJ Shumway held a second telephonic hearing in 2020.[23] Thereafter, the ALJ issued a new decision denying Plaintiff's disability application, finding:

---

[17] AR 175–81. Because the application filing date starts the relevant period for a Title 16 claim, the ALJ appropriately considered whether Plaintiff was disabled beginning December 15, 2015.

[18] AR 106–09, 116–19.

[19] AR 12–72.

[20] AR 1–8.

[21] AR 493–94, 496–511; *Trinidad R. v. Commissioner*, 19-cv-5052 (E.D. Wash. 2019).

[22] AR 512–17.

[23] AR 443–68.

- Step one: Plaintiff had not engaged in substantial gainful activity since the 2015 application date.

- Step two: Plaintiff had the following medically determinable severe impairments: borderline intellectual functioning, attention deficit disorder (ADD),[24] major depressive disorder, and generalized anxiety disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

  > he is limited to simple, routine, repetitive tasks with a reasoning level of two or less; he needs to learn by demonstration rather than by verbal instruction; he requires a routine, predictable work setting with no more than occasional, simple changes, and simple decision-making; he is precluded from contact with the public; he is limited to occasional, superficial interaction with supervisors and coworkers, with no collaborative tasks; and he cannot work at an assembly line pace or perform other fast-paced work.

- Step four: Plaintiff had no past relevant work.

---

[24] The ALJ referred to ADD, while many medical records refer to ADHD (attention deficit hyperactivity disorder). The Court refers to the condition as so referenced by the ALJ or health care professional but understands the references are referring to the same mental health condition experienced by Plaintiff.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as janitor, hand packager, garment sorter, housekeeper, bagger, and final assembler.[25]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the reviewing opinions of John Gilbert, Ph.D., Renee Eisenhauer, Ph.D., and Jay Toews, Psy.D., who each opined that Plaintiff was only mildly to moderately impaired.

- partial weight to the reviewing opinion of Donna Veraldi, Ph.D., who opined that Plaintiff was "probably" moderately impaired as to the B Criteria if he took ADD medication, and that without medication he was markedly impaired as to concentration, persistence, and pace and adapting and managing himself.

- little weight to the examining opinions of N.K. Marks, Ph.D. and Philip Barnard, Ph.D., and the reviewing opinions of Melanie Mitchell, Psy.D. and Tasmyn Bowes, Psy.D., who each opined that Plaintiff was markedly impaired as to performing within a schedule.[26]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but his statements

---

[25] AR 422–42.

[26] AR  434–35.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

concerning the intensity, persistence, and limiting effects of those symptoms were inconsistent with the medical evidence and other evidence.[27] Likewise, the ALJ discounted the lay statement from Plaintiff's mother.[28]

Plaintiff timely appealed to this Court.[29] Plaintiff argues the ALJ improperly rejected Plaintiff's subjective complaints and erroneously weighed the medical opinions, thereby improperly determining that he did not meet a listing and that he had the RFC to sustain fulltime work.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[30] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[31] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[32] Moreover, because it is the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court

––––––––––––––––––––

[27] AR 432–34.

[28] AR 435–36.

[29] *See* 20 C.F.R. § 422.201.

[30] 42 U.S.C. § 405(g).

[31] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[32] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[33] The Court considers the entire record.[34]

Further, the Court may not reverse an ALJ decision due to a harmless error.[35] An error is harmless "where it is inconsequential to the ultimate nondisability determination."[36]

### IV.    Analysis

**A.    Symptom Reports: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting his symptom reports. As is explained below, the Court agrees.

1.    Plaintiff's Symptoms

At the most recent hearing in 2020, Plaintiff testified that he has problems maintaining focus, often gets distracted while doing chores, and needs reminders to take care of hygiene, wash his clothes, and perform chores.[37] He testified that it is common for him to begin a project, get distracted, and then need a reminder to

-----

[33] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[34] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (considering the entire record); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

[35] *Molina*, 674 F.3d at 1111.

[36] *Id.* at 1115 (cleaned up).

[37] AR 456–58.

finish the task.[38] If he goes grocery shopping, he generally goes with his mother, or else he forgets basic items that he needs to buy, even if he has a list.[39] Plaintiff testified that he tried living with his sister but that he fairly recently returned home to live with his mother and step-father because it was too difficult on his sister to remind him to take care of himself and help out around the house.[40]

He also testified that, since the ALJ's first disability denial decision, Plaintiff tried working at a grocery store as a stocker and a janitor but he was unable to stay on task without constant reminders or work at a productive pace, and he was therefore fired.[41] He also tried working at an insulation company but he was let go because he was unable to remember how to perform the task correctly even though it was demonstrated to him several times.[42] Plaintiff also testified that his agricultural-work attempts were unsuccessful because he was unable to maintain pace, as he would just "space out."[43] He also stated that, although he had been trying to obtain his GED since 2017, he had not yet passed his GED exam.[44]

---

[38] AR 457–58.

[39] AR 457–60.

[40] AR 455–56.

[41] AR 460–61.

[42] AR 461–62.

[43] AR 463.

[44] AR 464–65.

In addition, Plaintiff reported that he last used ADHD medications about 5–6 years ago because the medication caused him to feel not "normal," as it made him to "think too much."[45]

At the initial hearing, Plaintiff testified to many of these same challenges and also that he is easily frustrated and will have angry outbursts.[46]

### 2.    ALJ's Findings

Although the ALJ found that Plaintiff was not malingering, the ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of his medically determinable impairments inconsistent with the objective medical evidence, his improvement with treatment, his level of daily activity, and his past work, including his statements about why he could not work.[47]

### 3.    Standard

The ALJ must "consider all of the evidence in an individual's record" to "determine how symptoms limit [the claimant's] ability to perform work-related activities" and  provide "specific, clear and convincing" reasons supported by substantial evidence for rejecting the claimant's symptom reports after considering

---

[45] AR 464.

[46] AR 59–61.

[47] AR 432–34.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

the relevant factors.[48] Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; 6) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms; and 7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.[49]

    4.    <u>Objective Medical Evidence</u>

    First, the ALJ discounted Plaintiff's reported symptoms because "the objective medical evidence and clinical observations in this record [were] largely unremarkable, as discussed by Dr. Toews."[50] Objective medical evidence—signs, laboratory findings, or both—is a relevant factor for the ALJ to consider when

---

[48] *See* 20 C.F.R. § 416.929(c); SSR 16-3p, 2016 WL 1119029, at *2, 7; *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[49] 20 C.F.R. § 416.929(c); SSR 16-3p.

[50] AR 432.

assessing a claimant's symptoms.[51] However, the ALJ cannot discount symptom reports solely because they are not fully corroborated by the objective medical evidence; yet, "contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."[52]

In finding that the objective medical evidence and clinical observations were "largely unremarkable," the ALJ relied on Dr. Toews' testimony and also highlighted that "Plaintiff's IQ scores are in the 70s and his mental status exams reflect only mild-moderate impairment."[53] Dr. Toews testified at the second administrative hearing. He did not examine Plaintiff but reviewed the psychological examination reports in the file, including those completed by Dr. Barnard and Dr. Marks.

///

///

///

//

/

---

[51] 20 C.F.R. § 416.902(k); 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[52] *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

[53] AR 432.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 12

The tests conducted by Dr. Barnard and Dr. Marks indicated:

| Dr. Marks (2016)[54] | Dr. Barnard (2018)[55] |
|---|---|
| Wechsler Adult Intelligence Scale-IV <br>• Perceptual reasoning = 88, 21%, low average <br>• Full scale = 72, 3%, borderline <br>• Verbal comprehension =70, 2%, borderline <br>• Working memory = 69, 2%, extremely low <br>• Processing speed = 76, 3%, borderline <br>• General ability = 77, 6%, borderline | Weschler Adult Intelligence Scale -IV <br>• Perceptual reasoning = 86, 18%, low average <br>• Full scale = 74, 4%, borderline <br>• Verbal comprehension = 72, 3%, borderline <br>• Working memory = 71, 3%, borderline <br>• Processing speed = 84, 14%, low average <br>• General ability = 77, 6%, borderline |
| No Weschler Memory Scale-IV administered but noting Plaintiff "showed very poor working memory. He had trouble holding information in his short term memory, manipulating it and drawing new conclusions or reapplying it in some way. His ability to solve mental math problems, remember and repeat back a list of numbers forward and backward or sequence a set of numbers and letters was very poor."[56] | Wechsler Memory Scale-IV <br>• Auditory memory = 77, 6%, borderline <br>• Visual memory = 80, 9%, low average <br>• Visual working memory = 83, 13%, low average <br>• Immediate memory = 70, 2%, borderline range <br>• Delayed memory = 80, 9%, low average |
| "Trinidad was able to remember auditory information immediately after hearing it if it was simple. He was not able to remember what he heard, rearrange it, and reapply it to a new situation. He will remember best what he sees."[57] | Plaintiff's memory was not within normal limits. He was able to recall zero words out of three after a five-minute delay. |

---

[54] AR 296–304.

[55] AR 627–31.

[56] AR 300.

[57] AR 302.

Dr. Marks acknowledged that Plaintiff did not "meet the criteria for mild intellectual disability due to his average scores on the three subtests for perceptual reasoning area and his overall perceptual reasoning score of 88, which falls in the low average range."[58] Nonetheless, Dr. Marks opined that Plaintiff would "have a very hard time holding any sort of job right now without some sort of interventions due to the multiplicity of his symptoms."[59]

Dr. Marks' 2016 opinion was largely consistent with her examining opinion in 2015. In her 2015 report, Dr. Marks noted that the testing reflected that Plaintiff "struggled with working memory and with distant memory" and "has very poor mental flexibility," and she opined that his abilities to learn new tasks, adapt to changes in a routine work setting, and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision was markedly limited.[60] Dr. Marks' 2015 opinion was reviewed and agreed with by Melanie Mitchell, PsyD.[61]

Dr. Barnard opined that Plaintiff had a marked overall severity rating, including marked limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without

---

[58] AR 299.

[59] AR 303.

[60] AR 289, 291.

[61] AR 407–09.

special supervision and completing a normal work day and work week without interruptions from psychologically based symptoms.[62] Dr. Barnard's opinion was reviewed and agreed with by Tasmyn Bowes, PsyD, who wrote that "evidence suggests that neurodevelopmentally based difficulties are likely primary to his problem maintaining employment."[63]

Similar to the cognitive testing conducted by Dr. Barnard and Dr. Marks, a Complex Child Psychological Evaluation conducted in 2012 by Carl Epp, Ph.D., showed that Plaintiff, even when on ADHD medication, struggled with maintaining attention, hyperactivity, and impulsiveness and that Plaintiff had "some major problems" with "intelligence and aptitude testing."[64] And Dr. Veraldi, who testified at the first administrative hearing, found that Plaintiff had "significant difficulties learning" with "a borderline IQ score" and he "is a person who needs some guidance, and needs somebody to help put him into a job, and find the right job, and deal with the problems."[65]

While Plaintiff's counseling records generally indicate normal mood, affect, thought process, and orientation, there is no indication in the record that the counseling treatment was directed at Plaintiff's learning disorders or ADD, but

---

[62] AR 629–30.

[63] AR 632–34, 640.

[64] AR 273–86 (cleaned up).

[65] AR 36, 39.

rather his anxiety and depression. The counselor repeatedly encouraged him to continue his GED studies, and twice accompanied Plaintiff to the college to sign him up for GED classes. Although Plaintiff took classes intermittently between 2017 and 2020 and he expressed a desire to obtain his GED (and to become an engineer), Plaintiff had not yet obtained his GED by October 2020.

The objective medical evidence shows that, collectively, Plaintiff's intellectual and other mental impairments impact his abilities to concentrate, persist, and maintain pace within a schedule. The wide spectrum of Plaintiff's cognitive limitations, as is reflected in the testing, supports rather than contravenes Plaintiff's reported symptoms. The ALJ's finding that the objective medical evidence and clinical observations were "largely unremarkable" is not supported by substantial evidence.[66]

5.    Improvement with Treatment and Failure to Engage in Treatment

An ALJ may discount a claimant's reported symptoms if they are sufficiently and consistently improved by treatment.[67] And an ALJ may discount a claimant's reported symptoms if prescribed treatment is available and expected to restore his

---

[66] *See Ghanim*, 763 F.3d at 1164; *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (cleaned up) (requiring ALJ to consider all competent evidence in the record).

[67] 20 C.F.R. § 416.913(c)(3); *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement).

ability to work but the claimant, without good cause, has failed to engage in such treatment.[68]

Here, the ALJ discounted Plaintiff's reported symptoms because his "limitations are clearly exacerbated when he does not use medications to control his ADD" and Plaintiff failed to "fully engage" with counseling.[69] The cited record—and record as a whole—does not support this finding.

First, the ALJ cited to Dr. Epp's 2012 Complex Child Psychological Evaluation Report completed when Plaintiff was fourteen, wherein Dr. Epp discussed Plaintiff's medication for ADHD and the treating physician's notes, which stated, "Patient is doing well in school" and that "Patient claims good focus and attention on medication but seems to be wearing off after school . . . ."[70] These self-reported "positive" statements about the then-youthful Plaintiff vary significantly from his actual performance at school, and one must consider that a school day is shorter than a workday.[71] Plaintiff's January 2012 school transcript, which encompassed the period of time that Plaintiff was taking medication, indicates he received Ds and Fs in all classes, except for a C- in Composition and a

---

[68] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); SSR 18-3p; POMS DI 23010.009.

[69] AR 432.

[70] AR 274.

[71] *Ghanim*, 763 F.3d at 1164 (interpreting medical records in their context).

C+ in fitness.[72] In 2014, Plaintiff earned Ds and Fs in all classes except for P.E., in which he received an A-.[73] When he dropped out of school in the 12th grade, Plaintiff's grade point average was 1.3.[74] Even if Plaintiff's mood and concentration improved to some degree when he took medication, he still struggled significantly at school. The "improvement" statements in Dr. Epp's report do not serve as substantial evidence to discount Plaintiff's reported difficulties maintaining concentration, persistence, and pace.

Second, in support of his finding that Plaintiff did better when on medication, the ALJ cited to an April 2017 psychotherapy note.[75] It is unclear why the ALJ cited to this treatment note, as during this psychotherapy session Plaintiff reported that he had used some of the counselor's suggested coping techniques during a difficult interaction with a family member but nonetheless Plaintiff was still so upset that he threw his food in anger—an improved reaction compared to his prior reaction to a similar situation during which he punched a mirror and cut his fist.[76] This noted "improvement" is not a clear and convincing reason supported by substantial evidence to discount Plaintiff's reported stress-related symptoms.

---

[72] AR 191–92.

[73] AR 222.

[74] AR 628.

[75] AR 383–85.

[76] AR 384.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Third, the ALJ cited to Dr. Marks' 2015 evaluation wherein it states "he was diagnosed with ADHD in 2013 by Dr. Tatunay. He was on Adderall for a while but has not been on it for about 2 years. He reports that he has an extremely difficult time without medications, does not recall what people say and 'Spaces out' without medications."[77] On its face, this reported statement indicates that Plaintiff's symptoms improved with medication; however, his grades, Dr. Epp's test results, and the mother's statements indicate that Plaintiff continued to struggle significantly pace even when on medication.

Fourth, the ALJ found that "even without meds, the evidence shows [Plaintiff] is no more than moderately limited."[78] In making this finding, the ALJ relied on Dr. Barnard's testing which "yielded higher IQ and memory scores" than the testing by Dr. Marks in 2016. Yet, as the above chart indicates, the test results were largely similar—both indicated that Plaintiff's intellect, working memory, and general ability were significantly limited. Although Plaintiff's working memory improved by 1% and his processing speed increased by 9% between these two examinations, the overall test results do not afford substantial evidence to support the ALJ's finding that "even without meds" Plaintiff "is no more than moderately limited."[79]

---

[77] AR 403.

[78] AR 432.

[79] AR 432.

1

2        Fifth, the ALJ found that Plaintiff failed to fully engage with counseling,

3   highlighting that Plaintiff was "discharged from counseling in April 2020, after

4   failing to engage for almost a year."[80] The record reflects that Plaintiff missed

5   counseling appointments when he initially began counseling in the spring of

6   2017.[81] However, he routinely attended counseling from May 2017 to October 2017,

7   at which time a new counselor was assigned to his case, followed by his

8   grandfather's death, and his involvement in a motor vehicle accident.[82] He

9   resumed counseling on a regular basis from January 2018 to March 2018, at which

10  time he resumed the GED program and had difficulty managing GED attendance,

11  homework, and counseling.[83] He then resumed counseling in May 2018 and

12  continued through July 2018, stopping again when he began a job.[84] In March

13  2019, he resumed counseling after losing that job and continued with counseling

14  through May 2019, when he tried to find work again.[85] This record reflects that

15  Plaintiff meaningfully engaged in counseling but counseling was sometimes

16  interrupted when he was addressed other things, such as major life stressors,

17

18  _____

19  [80] AR 432.

20  [81] *See, e.g.*, AR 401, 394–97.

21  [82] AR 335–38, 694.

22  [83] AR 327–33, 679–85.

23  [84] AR 672–77, 643–45.

    [85] AR 641–61.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

participating in the GED program, or trying to gain (and retain) employment. While the counseling notes generally indicate fairly normal mental status findings as to mood and behavior, the counseling notes also reflect that, notwithstanding a desire to obtain a GED or maintain a job, Plaintiff was unable to successfully complete the GED program with the repeated support of his counselor and that he was unable to maintain a fulltime job.[86] Plaintiff's inability to complete the GED program over a span of several years and/or hold down a fulltime job, notwithstanding a desire to do so, supports rather than detracts from Plaintiff's reported symptoms. The ALJ's finding that Plaintiff failed to fully engage in counseling is not a clear and convincing reason supported by substantial evidence to discount Plaintiff's reported symptoms. Moreover, the ALJ failed to explain how additional counseling would assist Plaintiff with his borderline intellectual functioning and ADD, which are the main sources of his concentration, persistence, and pace difficulties.

Sixth, the ALJ discounted the reasons given by Plaintiff for discontinuing his ADD medication because 1) Plaintiff did not report side effects to treatment providers, 2) there is no indication that Plaintiff attempted other medication that might have the same positive results without alleged side effects, and 3) Plaintiff did not seek medication even though he had medical insurance.

---

[86] AR 328–29, 649–50, 658–59.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

As to the first basis, the only individuals Plaintiff sought treatment from were his counselors, and there is no indication that the counselors were qualified to prescribe medication for Plaintiff's ADD. Therefore, that Plaintiff did not report ADD medication side effects to his counselors is not a legitimate basis to discount his symptom testimony.

As to the second basis, there is no medical evidence or testimony that different ADD medication would provide the "same positive results" without side effects. Moreover, as stated previously, the record does not support a finding that ADD medication would so improve his ability to concentrate, persist, and maintain pace that he would no longer be markedly limited.

As to the third basis (that Plaintiff did not seek medication even though he had medical insurance), Dr. Marks in 2015 recommended that Plaintiff "[s]hould revisit medications again with his family physician as they may help him with focus and concentration,"[87] and in 2016, she recommended "medication management for symptoms of ADHD, anxiety, depression."[88] Dr. Veraldi testified that medication "probably" would reduce Plaintiff's concentration, persistence, and pace limitations to "moderate," though she indicated the record was not clear as to why he stopped the medication and why he had not resumed medication.[89]

---

[87] AR 290.

[88] AR 304.

[89] AR 35–46.

Notwithstanding these hopeful recommendations that ADD medication would assist Plaintiff, the school records and Dr. Epp's testing reveal that medication did not improve Plaintiff's non-exertional functioning to an extent that he could persist and sustain fulltime employment. As recognized by Dr. Bowes, the evidence suggests Plaintiff's "neurodevelopmentally based difficulties are likely primary to his problem maintain employment."[90] That Plaintiff did not resume ADD medication is not a clear and convincing reason on this record to discount his symptom reports.

Finally, the ALJ highlighted that Plaintiff's testimony at the two administrative hearings varied as to the reasons he stopped taking his ADD medication. At the second hearing, Plaintiff stated that the medication made him "think[] too much and he "didn't feel normal."[91] At the first hearing, he stated the medication gave him insomnia and triggered a gag reflex.[92] These statements do vary. However, these reported side effects are not necessarily inconsistent with each other; any number of factors may influence someone's choice to either stop or continue with a given medication. Further, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking

---

[90] AR 640.

[91] AR 463–64.

[92] AR 48–49.

rehabilitation."[93] The record reflects that Plaintiff scored poorly on distant memory tests and has borderline intellectual functioning. Therefore, that Plaintiff offered varying accounts as to the side effects of his ADHD medication is not a clear and convincing reason to discount his symptom reports. Moreover, this record does not indicate that with ADD medication Plaintiff's cognitive impairments will improve to such extent that he can persist in and sustain fulltime work.

### 6.    Activities of Daily Living

The ALJ also discounted Plaintiff's reported symptoms because they were not supported by his level of daily activity. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional activities, the ALJ may find these activities inconsistent with the reported disabling symptoms.[94] Here, the ALJ highlighted 1) Plaintiff's statements about his activities in his function report, 2) Plaintiff's description of daily living activities to Dr. Barnard, and 3) that it appeared Plaintiff "relied on his family based on his mother's wishes, rather than true inability to perform such activities."[95]

---

[93] *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1209–1300 (9th Cir. 1999).

[94] *Molina*, 674 F.3d at 1113.

[95] AR 433.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

        First, as to Plaintiff's statements in his function report, the ALJ highlighted

that Plaintiff reported he is generally independent with activities of self-care,

including dressing, grooming, and bathing, though he often receives reminders

from his mother; assists with the family pets; prepares his own meals; completes

multiple household chores on a regular basis; goes out alone; is able to drive a car,

though his mother does not want him to do so; shops in stores for necessities; and

frequently engages in social activities such as card, board, and video games.[96] As to

self-care, the ALJ fails to explain how Plaintiff's ability to engage in self-care with

reminders is inconsistent with his reported non-exertional symptoms, particularly

as poor hygiene was observed by Dr. Barnard.[97] The ALJ also fails to explain how

Plaintiff assisting with caring for the family's two dogs—a task that is not lengthy

and for which his mother must provider reminders—is inconsistent with his

symptom testimony.[98] As to meals and cooking, the record reflects that Plaintiff

lives with his family and is not responsible for his meals other than lunch.[99] And

although Plaintiff can physically drive a car and shop in a store, he does not have a

driver's license and his mother stated that he will get frustrated after shopping for

---

[96] AR 433 (citing AR 214–21).

[97] AR 630 (noting that "hygiene was somewhat deficient, with [Plaintiff] exhibiting

a pronounced body odor").

[98] AR 236.

[99] AR 236.

more than one hour.[100] Finally, he reported that he "sometimes"—as opposed to "frequently" as the ALJ stated—plays card games, board games, and videogames."[101] None of these noted activities are inconsistent with Plaintiff's reported difficulties sustaining concentration and persisting for a workday. As the Ninth Circuit has repeatedly asserted, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from h[is] credibility as to h[is] overall disability."[102]

Second, as to Dr. Barnard's notes about Plaintiff's reported symptoms to him, Dr. Barnard wrote that Plaintiff:

arises at 7 or 8 AM. He feeds the dogs. He makes himself breakfast. He accomplishes chores outside. He eats lunch around noon. He works out in the afternoon. He eats dinner at approximately 4 PM. He spends the evening with his family at home.

He reported that he has friends. He does not participate in any group activities. He attends church. He enjoys football, basketball, and

_____

[100] AR 238, 288.

[101] AR 218, 433.

[102] *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (Although the claimant could grocery shop without assistance, walk approximately an hour in the malls, play cards, swim, watch television, and read, those activities did not consume a substantial part of her day and so did not detract from her credibility.).

soccer. His hobbies include working out. He spends his spare time jogging. For fun, he plays basketball.[103]

These activities—on their face—appear consistent with activities that would be performed by a high-functioning individual. However, the ALJ failed to consider that these activities must be weighed in the context of the particular impairments and resulting limitations at issue.

Plaintiff does not allege he is physically disabled. Rather, Plaintiff alleges he is unable to persist and maintain concentration and pace to the extent required in the competitive workforce. Although Plaintiff can physically do chores and exercise, he requires reminders to perform chores and follow through on responsibilities, including hygiene. His testimony is consistent with the statement from his mother that Plaintiff needs reminders to do chores and take care of his hygiene; his observed poor hygiene by Dr. Barnard; his mother's statement that Plaintiff has always required constant reminders and encouragement to follow through on an activity; the continuous attempts by his counselors to assist him with the GED program, his poor school grades (except for P.E.); and his inability to maintain a job or to live successfully at his sister's with less parental support. On this record, the self-reported activities by Plaintiff, an individual with borderline intellectual functioning, is not a clear and convincing reason to discount his reported symptoms.

---

[103] AR 828 (cleaned up).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Finally, the ALJ found that Plaintiff relied on his family to assist him, not because of his impairments, but because of his mother's wishes.[104] The ALJ did not cite any supporting evidence for this finding. Contrary to this finding, Plaintiff had moved out of his mother and stepfather's house and lived with his sister for about a year-and-a-half before moving back home because his sister was tired of having to remind him to address his personal hygiene and clean up after himself.[105] Moreover, his mother's desire that he not drive is reasonable given that Plaintiff does not have a driver's license.

Plaintiff's activities of daily living are not a clear and convincing reason supported by substantial evidence to discount his reported non-exertional symptoms.

### 7.   Work Attempts

The ALJ also discounted Plaintiff's reported symptoms because he worked part-time most of the quarters since the ALJ's initial decision in 2018. An ALJ may consider whether a claimant's intermittent work, attempts to look for work, and reasons for not working are inconsistent with his reported symptoms.[106]

---

[104] AR 433.

[105] AR 677, 446–57.

[106] 20 C.F.R. § 416.929  (considering work record when assessing reported symptoms); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 28

After the ALJ's initial denial in April 2018, Plaintiff tried working as a stocker and janitor at a grocery store, as an insulation installer, and as an agricultural worker.[107] Even though Plaintiff was eager to work, as is reflected in his comments during counseling sessions, Plaintiff was unable to sustain any of the positions he obtained.[108] Thus, regardless of whether Plaintiff reported to Dr. Barnard in March 2018 that "he could work stocking shelves," the record reflects that Plaintiff was unable to sustain such work.[109] And regardless of what role Plaintiff believes the lack of a father figure in his life plays on his ability to sustain fulltime work, the record reflects that Plaintiff's mental impairments markedly impacted his ability to sustain fulltime work. The ALJ's finding otherwise is not a clear and convincing reason supported by substantial evidence.

8.    <u>Consequential Error</u>

Plaintiff establishes the ALJ erred by discounting his symptom reports. This error was consequential. Because the ALJ did not articulate specific, clear, and convincing reasons to reject Plaintiff's reported symptoms, the corresponding

---

[107] AR 598–610.

[108] AR 649–60.

[109] AR 433. *See Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999) ("Where it is established that the claimant can hold a job for only a short period of time, the claimant is not capable of substantial gainful activity.").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 29

limitations must be included in the RFC.[110] The vocational expert during the 2018 hearing testified that if an individual is off task more than 10 percent of the workday, requires a sheltered work environment, is absent more than once a month, and/or continues to engage in inappropriate interactions with supervisors, then the individual would be unable to sustain competitive employment.[111] If Plaintiff's reported persistence difficulties are credited and included in the RFC, Plaintiff is unable to maintain competitive employment.

**B.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff also argues the ALJ improperly weighed the medical opinions, including Dr. Barnard's and Dr. Toews' opinions. The Court agrees.[112]

1.    <u>Dr. Barnard</u>

In February 2018, Dr. Barnard conducted a psychological evaluation of Plaintiff.[113] Dr. Barnard diagnosed Plaintiff with borderline intellectual

---

[110] *Lingenfelter*, 504 F.3d at 1035.

[111] AR 69–71. The ALJ did not elicit testimony from the vocational expert at the 2020 hearing.

[112] Because the ALJ consequentially erred when weighing Dr. Barnard's and Dr. Toews' opinions, Plaintiff's arguments as to the other medical opinions need not be addressed.

[113] AR 635–39.

functioning and generalized anxiety disorder, and he opined that Plaintiff was overall markedly impacted based on the following limitations:

- Moderately limited in understanding, remembering, and persisting in tasks by following very short and simple instructions; performing routine tasks without special supervision; making simple work-related decisions; and asking simple questions or requesting assistance.

- Markedly limited in understanding, remembering, and persisting in tasks by following detailed instructions; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision; learning new tasks; adapting to changes in a routine work setting; being aware of normal hazards and taking appropriate precautions; communicating and performing effectively in a work setting; maintaining appropriate behavior in a work setting; completing a normal work day and work week without interruptions from psychologically based symptoms; and setting realistic goals and planning independently.

The ALJ assigned little weight to Dr. Barnard's opinion because it was 1) "in a checkbox form with no explanation for the ratings given"; 2) internally inconsistent; 3) "inconsistent with the longitudinal record showing [Plaintiff] to be doing well overall with a stable mood, studying for his GED, looking for work, etc.";

1

2
and 4) "inconsistent with the detailed testimony of Dr. Toews, who had the benefit
of reviewing the entire record."[114]

3
      2.    <u>Dr. Toews</u>

4
      Dr. Toews, who testified at the second hearing, diagnosed Plaintiff with

5
borderline intellectual functioning, ADD, major depressive disorder, and

6
generalized anxiety disorder.[115] He opined that Plaintiff's non-exertional

7
limitations from these impairments would be mild if Plaintiff was taking ADD

8
medication; but, Dr. Toews opined that the non-exertional limitations would

9
instead be moderate if Plaintiff was not taking ADD medication.[116]

10
      The ALJ gave great weight to Dr. Toews' opinion because it was 1) based on

11
the results of the tests performed by Dr. Barnard in 2018 and Dr. Marks in 2016,

12
and 2) "consistent with the longitudinal record, including the test scores and

13
[activities of daily living] noted" in Dr. Barnard's 2018 report, the counseling

14
records from 2018–20 "showing [Plaintiff] to be doing well overall, and [Plaintiff's]

15
admitted work activity and functional abilities."[117]

16

17

18

19
[114] AR 435.

20
[115] AR 449–53.

21
[116] AR 450–53.

22
[117] AR 434.

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### 3.  Standard

Because Dr. Barnard's opinion was contradicted by Dr. Toews' opinion, the

ALJ was required to provide specific and legitimate reasons supported by

substantial evidence for discounting Dr. Barnard's opinion and specific and

legitimate reasons supported by substantial evidence for giving great weight to

Dr. Toews' opinion.[118]

### 4.  Analysis

#### a.  *Adequate explanation*

First, the ALJ discounted Dr. Barnard's opinion on the basis that it was a

checkbox opinion unsupported by adequate explanation. An ALJ may discount an

opinion that is inadequately supported by an explanation.[119] Dr. Barnard's

Psychological/Psychiatric Evaluation not only contained his opined "checkbox"

limitations as to Plaintiff's basic work activities but also identified the records he

reviewed and his summary of the clinical interview and mental status

examination, which included Plaintiff's results on the conducted Wechsler Memory

Scale-IV, WAIS-IV, Digit Span, and Halstead's Trail Making tests. Based on the

reviewed, observed, and elicited information, Dr. Barnard found Plaintiff's

memory, fund of knowledge, abstract thought, and insight and judgment to be

---

[118] *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

[119] *See Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).

abnormal. On this record, Dr. Barnard's abnormal findings provided a sufficient explanation for his opined limitations, particularly given their consistency with the abnormal findings by the other examining mental health professionals, and that Dr. Toews did not provide a more meaningful explanation for his opined limitations, which were based largely on Dr. Barnard's and Dr. Marks' test results. The ALJ's finding otherwise is not a legitimate reason supported by substantial evidence to discount Dr. Barnard's opinion.

### b. *Internal consistency*

Second, the ALJ discounted Dr. Barnard's marked limitations because they were internally inconsistent with the test scores and Plaintiff's interview statements about his activities of daily living, while giving more weight to Dr. Toews' opinion because it was purportedly consistent with Dr. Barnard's and Dr. Mark's test scores and Plaintiff's interview statements. While an ALJ may discount an opinion that is internally inconsistent,[120] the tests conducted by Dr. Barnard revealed that Plaintiff had an auditory memory index in the borderline range, a visual memory in the low average range, a visual working memory in the low average range, an immediate memory in the borderline range, and a delayed memory in the low average range, and that his full-scale estimate placed him in

---

[120] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported); *Lingenfelter*, 504 F.3d at 1042.

the borderline range of intellectual functioning. Plaintiff's concentration was within normal limits on two other tests. However, that Plaintiff's concentration was within normal limits on two of the conducted tests does not eviscerate the basis for Dr. Barnard's opinion given Plaintiff's abnormal results on the memory, fund-of-knowledge, abstract-thought, and insight-and-judgment tests.

The ALJ's finding that Dr. Barnard's opinion was inconsistent with the test scores is not supported by substantial evidence. Moreover, Plaintiff's activities of daily living, as reported to Dr. Barnard, are consistent with Dr. Barnard's opined marked limitations as they did not require sustained concentration and, to the extent they require persistence, Plaintiff struggles.[121] As his mother stated, Plaintiff often requires reminders to do chores and take care of personal hygiene, with Dr. Barnard observing Plaintiff with pronounced body odor. Therefore, the ALJ's second reason—that Dr. Barnard's opinion is internally inconsistent with the test scores and Plaintiff's interview statements about his activities of daily living—is not a specific and legitimate reason supported by substantial evidence.

Likewise, the ALJ's finding that Dr. Toews' opinion was consistent with the test scores is not supported by substantial evidence. Dr. Toews selectively focused on the normal findings in Dr. Barnard's and Dr. Marks' reports. In comparison, even though Plaintiff did not meet the criteria for mild intellectual disability, Dr. Barnard, Dr. Marks, Dr. Mitchell, and Dr. Bowes all agreed that Plaintiff was

---

[121] AR 429 (citing AR 828).

markedly limited in his ability to perform within a schedule, learn new tasks, and adapt to changes.[122] And Dr. Carl Epp's testing showed that Plaintiff, even when on ADHD medication, struggled with maintaining attention, hyperactivity, and impulsiveness, and that Plaintiff had "some major problems" with "intelligence and aptitude testing."[123] In summary, the tests scores show that Plaintiff's mental impairments collectively impact his ability to perform tasks. The ALJ's finding that Dr. Toews' opinion was more consistent with Plaintiff's test scores than Dr. Barnard's opinion is not a legitimate finding supported by substantial evidence.

c.    *Consistency with the longitudinal record*

The ALJ's third reason—that Dr. Barnard's opinion was inconsistent with the longitudinal record showing Plaintiff to be doing well overall with a stable mood, engaging in activities of daily living, studying for his GED, and looking for work, while Dr. Toews' opinion was consistent with the longitudinal record—is similarly not a legitimate finding supported by substantial evidence.[124] Dr. Barnard's opined limitations were not primarily based on Plaintiff's mood; instead, they were primarily based on Plaintiff's borderline intellectual

---

[122] AR 303, 289, 301, 407–09, 629–30.

[123] AR 273–86.

[124] *See Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (recognizing that it is not legitimate to discount an opinion for a reason that is not responsive to the medical opinion).

functioning, which was reflected in the abnormal test results. As to Plaintiff's personal hygiene and chores, Plaintiff often needs reminders to follow through with them, and such activities generally can be done in a short period of time and do not require sustained attention and focus. As to Plaintiff's GED studies, the record reflects that Plaintiff began taking GED courses in the spring of 2017.[125] Notwithstanding the assistance of his mental-health counselors and college tutors and his repeated stated desire to obtain a GED and/or be employed, Plaintiff still had not obtained his GED by the time of the second administrative hearing in October 2020, and he had numerous failed employment attempts. These failed attempts are consistent with—rather than inconsistent with—Dr. Barnard's opined limitations. The ALJ's finding otherwise is not supported by substantial evidence.

### d.   *Consistency with the other medical opinions*

Finally, the ALJ discounted Dr. Barnard's opinion because it was inconsistent with the testimony of Dr. Toews, who had the benefit of reviewing the entire record. Whether a medical opinion is consistent with the longitudinal record—including other medical findings and observations—is a factor for the ALJ to consider.[126] The ALJ may also consider whether the medical expert met with the

---

[125] AR 383–87.

[126] 20 C.F.R. § 416.920b(b); *Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole and assess the amount of relevant evidence that supports the opinion).

claimant and the extent to which a medical source is "familiar with the other information in [the claimant's] case record."[127] Here, Dr. Toews reviewed more of the record than Dr. Barnard, but Dr. Barnard examined Plaintiff and also reviewed Dr. Marks' 2015 opinion. Dr. Toews' testimony indicates he largely relied on Dr. Barnard's and Dr. Marks' opinions—or his interpretation of those opinions and the test results contained therein. The ALJ failed to explain how Dr. Toews' opinion, which was largely a recitation of portions of Dr. Barnard's and Dr. Marks' test results, was more detailed than Dr. Barnard's opinion. Dr. Toews' testimony reveals that he simply reached a different conclusion than Dr. Barnard and Dr. Marks. Yet, Dr. Barnard's opinion had been reviewed—and agreed with—by Dr. Bowes. And Dr. Marks' 2015 opinion had been reviewed—and agreed with—by Dr. Mitchell. Likewise, Dr. Veraldi, the expert who testified at the first hearing, opined that Plaintiff was more limited than what Dr. Toews later opined. On this record, the ALJ's decision to discount Dr. Barnard's opinion because it was inconsistent with the testimony of Dr. Toews is not a specific and legitimate reason supported by substantial evidence.

> 5.  Consequential Error

The ALJ erroneously weighed the opinions prepared by Dr. Barnard and Dr. Toews. By discounting Dr. Barnard's opinion and giving great weight to

---

[127] 20 C.F.R. § 416.927(c).

Dr. Toews' opinion, the ALJ crafted an RFC that did not include the work-preclusive persistence and pace limitations. This error was consequential.

## C.    Remand for an Award of Benefits.

Plaintiff submits a remand for payment of benefits is warranted. The Court agrees.

A district court "ordinarily must remand to the agency for further proceedings before directing an award of benefits."[128] The "credit-as-true" rule, on which Plaintiff relies, is a "rare and prophylactic exception to the ordinary remand rule."[129] For the Court to remand for award of benefits, three conditions must be satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[130]

Each of these elements are met. First, the record contains a child psychological examination that indicates Plaintiff's learning disorder and ADD were present as a youth and caused significant difficulty for Plaintiff at school. Dr. Marks' and Dr. Barnard's testing indicate that Plaintiff continues to struggle

---

[128] *Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017).

[129] *Id.*

[130] *Garrison*, 759 F.3d at 1020.

markedly due to his impairments. And his inability to obtain a GED over a span of three years along with several failed employment attempts corroborate Plaintiff's symptom report that he had difficulty performing even routine tasks within a schedule.

Second, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's symptom testimony and the medical opinion of Dr. Barnard.

Third, per the vocational expert's testimony, if Plaintiff's symptom testimony and Dr. Barnard's medical opinion are credited as tree, Plaintiff is unable to maintain competitive employment.

Further administrative proceedings are unnecessary. Moreover, the Commissioner had two opportunities to develop the record and issue an administrative decision. Having consequentially erred on these two occasions, an award of benefits is appropriate.[131] Remand for a payment of benefits from the date the Title 16 disability application was filed, December 15, 2015, is appropriate.

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

---

[131] *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (noting that repeated remands may sometimes result in an unfair "heads we win; tails, let's play again" scenario).

2. The Commissioner's Motion for Summary Judgment, **ECF No. 20**, is **DENIED**.

3. The ALJ's decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for immediate calculation and award of benefits.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff.

5. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 14th day of March 2022.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge